As a result of an incident that took place on May 2, 2001, the defendant was found guilty, by a District Court jury, of discharging a firearm within 500 feet of a dwelling or other building in use.[1]
On appeal, the defendant claims that the judge committed error in (1) denying his motion for a required finding of not guilty, and (2) instructing the jury in regard to the meaning of “discharge” relative to discharge of a firearm.
1. The denial of the motion for a required finding of not guilty. We summarize the evidence in the light most favorable to the Commonwealth. Commonwealth v. Angelo Todesca Corp., 446 Mass. 128, 132 (2006). Paul Nutile and his son Joseph owned a farm in Groton. In 1995 or 1996, they opened and operated an ice cream and farm stand (stand) on a portion of their property, across the street from a house owned by the defendant. The house consisted of two residential units, including one apartment rented out to one Draughon, and a commercial unit occupied by a barbershop. The defendant opposed the opening of the stand and he and the Nutiles had been involved in numerous court proceedings over the opening of the stand. The stand had not been in operation as a business for some time and was, at that time, used as a storage facility.
On May 2, 2001, the Nutiles were working on their farm when they heard noises, which sounded like firecrackers, coming from the direction of the defendant’s property. Joseph saw the defendant standing in his driveway with what appeared to be a gun in his hand. When Paul walked toward the defendant, asking if he was going to shoot him, the defendant pointed the gun at him and began to shoot at both Paul and Joseph.[2] Paul heard six to nine popping sounds but did not see any bullets. Joseph called the police on his cellular telephone; the defendant retreated into his home upon the arrival of the police.
After the police arrived, they talked to Draughon and the owner of the Gro- *893 ton Nursery, which was located about 100-120 feet from the defendant’s property. A police officer went to the defendant’s home and spoke to him about the incident. He informed the police that he had a starter pistol and that he had fired the weapon at the Nutiles.
The police took the starter pistol and eight rounds, four discharged .22 caliber blank cartridge casings and four .22 caliber blanks, to the State police ballistic section in Sudbury. The pistol was examined and a trooper, who was qualified at trial as an expert, found that it had been altered in that it did not contain a barrel plug or obstructions in the cylinder which would stop a projectile from passing through the barrel. The expert was able to fire live ammunition and issued a certificate that the starter pistol was indeed a firearm because it had a barrel length of two and one-half inches and was capable of discharging live ammunition. We now discuss the issues raised by the defendant.
General Laws c. 269, § 12E, as amended by St. 1972, c. 261, states in relevant part:
“Whoever discharges a firearm . . . within five hundred feet of a dwelling or other building in use, except with the consent of the owner or legal occupant thereof, shall be punished .... The provisions of this section shall not apply to . . . (f) the discharge of blank cartridges for theatrical, athletic, ceremonial, firing squad or other purposes in accordance with [G. L. c. 148, § 39].”
The defendant focuses on the word “discharges” in the statute and claims, because the undisputed evidence demonstrated that the starter pistol did not discharge a bullet or projectile but fired only blanks, that he did not violate the statute. The defendant also contends that the judge committed error in his definition of “discharge” in his jury instructions.[3]
According to the defendant, because there are certain delineated exemptions for the firing of blanks, there is an ambiguity whether the firing of blanks in this matter was also intended to be exempted. We do not see an ambiguity.
The statute sets forth specific exemptions from its application, including “the discharge of blank cartridges for theatrical, athletic, ceremonial, firing squad, or other purposes in accordance with [G. L. c. 148, § 39].” By setting out specific exemptions from the statute, the Legislature implicitly intended, in our view, not to exempt from the statute the firing of blanks from a firearm as occurred here. See Trust Ins. Co. v. Bruce at Park Chiropractic Clinic, 430 Mass. 607, 609 (2000) (“As a general rule, an express inclusion of one thing in a statute is an implied exclusion of things not mentioned . . .”).
Therefore, we are satisfied that the Legislature intended to prohibit the type of conduct by the defendant that occurred here.
Dana Alan Curhan (Brad P. Bennion with him) for the defendant.
Kerry Anne Kilcoyne, Assistant District Attorney, for the Commonwealth.
2. The judge’s instruction. The judge charged the jury that the word “discharge” is “to cause hot gosses to rapidly pass up the barrel of a firearm, rifle or shotgun.”
The defendant claims that the judge’s definition required the jurors to convict him of discharging a firearm even if they found that he only fired blanks.
In view of our decision that the manner in which the defendant fired blanks is criminalized in the statute, we need not consider further this issue.

Judgment affirmed.

The defendant was found not guilty of assault by means of a dangerous weapon, threatening to commit a crime against the person of another, disorderly conduct, and carrying a firearm without a license.

Draughon, the defendant’s tenant, also testified that he heard “popping” sounds.

The defendant weakly challenges whether the evidence was sufficient to establish that the starter pistol was a firearm and whether a dwelling or other building was in use within 500 feet of the firing of the blanks.
There was ample evidence that the starter pistol was indeed a firearm, see G. L. c. 140, § 121, and that there were buildings in use, i.e., the stand used for storage and the nursery, within 500 feet. See Commonwealth v. Forish, 61 Mass. App. Ct. 554, 562 n.11 (2004) (holding there was ample evidence that shots were fired within 500 feet of buildings “in use”).